Good morning, and may it please the Court, Andrew Sherman, Sils Cummins, on behalf of the appellant, Michael Lane, the liquidating trustee of Gardens Regional. Your Honors, along with me at the bench at the Council table is Barst Mankiewicz, my firm, and David Guess, also counsel to Mr. Lane. With the Court's permission, I'd like to reserve three minutes. All right, watch the clock. Thank you. The issue for this morning relates to the boundaries of equitable recoupment under Ninth Circuit law. And as recognized by this Court, two separate occasions, equitable recoupment is a judicial-made doctrine, really an exception to various priority schemes of the Bankruptcy Code. With the Court's indulgence, I'd like to start with a sample hypothetical, maybe ground the issues, because they're somewhat unclear unless you sort of get them into practice. So think about a distressed hospital, can't pay its bills, can't pay its trade, and it can't pay its tax or fee obligations to the state for the age cloth program. Ultimately, it's forced to file a bankruptcy and starts to operate in a post-petition basis. A couple weeks after the bankruptcy, everything's going fine. A Medi-Cal patient presents to the hospital with a severe cardiac problem. The hospital, inconsistent with its mission, provides care to that Medi-Cal patient and incurs significant debts, incurs a stent, goes to medical providers, pays the cardiologist, pays the anesthesiologist, incurs significant debts. A couple weeks later, the hospital submits the bill to Medi-Cal to receive payment. And magically, that payment gets intercepted. And that payment gets intercepted and pays down the state under its tax or fee cloth program. Well, that's got massive implications for a hospital trying to operate in the context of a bankruptcy. First and foremost, the hospital's receiving less for that Medi-Cal patient than otherwise provided. And we know that under federal law that this cloth program, quality assurance fee program, can't correlate to basically Medicaid reimbursements. So there can't be any correlation, but effectively the hospital's receiving less because of this recoupment concept. But you sort of keep going forward and you sort of think about bankruptcy policy, which is to allow this entity, and in this instance, a health care provider, to try to reorganize. Well, now you've just taken revenue, which could pay the doctors performing the procedure, pay the trade vendor for providing the stent used to pay this patient. But there's no revenue to pay those people because it got intercepted by the state. So the implications of a recoupment in a bankruptcy, and especially in a health care bankruptcy, are significant. But the test is whether there's a logical relationship. Why isn't there at least a logical relationship between the, you call it, H-QA fees going into a pot, and the Medi-Cal fees going out of a pot, and the supplemental payments going out of the very same pot? Why isn't that a sufficient logical relationship to tag those two together under the recoupment  Good question, Your Honor. Two or three reasons. One is federal law de-links them. So when this- I'm sorry. I didn't catch. What did you say? Federal law what? De-links. Does not allow for a correlation. That the hold harmless provision basically says that- Well, is the issue of whether it puts them in violation of the hold harmless issue, I mean, is that even before us? The only question for us is whether there's a sufficient logical relationship to trigger the recoupment doctrine. Do we have to take into account that they might independently violate something else by having done that? Well, but if you sort of think about it, Your Honor, if something cannot correlate, then how can it logically relate? Is that if federal law in the program was implemented says one stream has to be over here, and one stream has to be over here, once you're allowing recoupment, once the logical relationship bounds are struck together, you're inherently correlating them or relating them. So logical relationship is- it's an elastic test. I understand from TLC and Newberry, but not without bounds. And that elasticity must be measured just because of the hypothetical we just- we talked about, right? Apart from that, you know, the non-correlation rule and subsection W, what argument do you have that they don't logically relate when they go in and out of the very same pot of money? Two distinctions, Your Honor. One is a timing lag, such that the coif tax payment is due quarterly and is then paid in, and then the supplemental payments don't come out until 12 to 18 months later. So that there's no direct correlation, and there's no direct correlation. So the second point is there are different formulas. And that's, again, by federal law is you can't put a dollar in on a tax and expect a dollar back on a supplemental payment. That's just the way the program works. So if you sort of think about how- the best answer I can give, Your Honor, is TLC. TLC was sort of the prototypical example of equitable recoupment, because you had estimated payments to Medicare and then the subsequent audit. And there was always that netting, that interconnection or interlinking between the cost years and the reports. One depended upon each other. With regard to the tax fee here against either the fee for service or the supplemental payment, there's a line in the sand. The line in the sand was created by federal law, but also the line in the sand is both timing and calculation. You can sort of think about it, Your Honor, almost as there are various ships going across the sea, but they're going different channels. So if you sort of think about- and I understand that if you're paying dollars in to the program, and that was at the BAP level, it was Judge Kurtz sort of said, well, that's not fair. That was sort of his- he says, why is it fair that you can not pay into the system and get something out? Well, let me explain that. One is the state can get a claim. It's one of priority. And it was sort of a congressional mandate of the priorities of the Bankruptcy Code. So it's- that's not fair is the state, just like every general unsecured creditor can have a claim. The question is, can the state go to the head of the class? And that's the question for this panel. The state usually goes to the head of the class one way or another, doesn't it? So does the federal government. Yes, Your Honor, but you have a tension. And the tension is, in a bankruptcy setting, when the court is applying an equitable doctrine, should the state allow itself to be put ahead of the class to collect unrelated debts? And I'd like to harp on it, if the Court will You're asking for not only the- you're asking for relief on the supplemental payments and fee for service, correct? Correct. The fee for service, Your Honor, is much clearer. Because on the one hand, you have taxes and fees, whatever you want to call it, on one side of- Why is this- I'm having a hard time with why the supplemental. Why you're entitled to relief on the supplemental? Okay. Well, hopefully that presumes I've convinced Your Honor a little bit on the fee for service. Well, you haven't, but I'm willing to- I'm open, okay? Thank you, Your Honor. You're welcome. On the supplemental, again, threefold. It's- I guess the way to look at it is, why should the state get something other than a general unsecured claim? Because just you're participating in the program. It's not a priority created by Congress. Congress could have simply said state health care taxes are entitled to priority. So the other way to look at it, Your Honor- But the state withholds the supplemental from, effectively, from fee for service from the outset, doesn't it? Outside of the context of the bankruptcy court. Outside of the context of the bankruptcy, they have the ability to deduct either stream. Right. That's correct. But then the question for this- Supplemental, they deduct that first, is what you're saying. No, I'm not saying that. Okay. I'm simply saying is what happened here is they deducted from both streams. I know they did, but generally speaking, it comes out of the supplemental first. I don't know that, Your Honor. That's a- So you're saying they're both the same, and then you should have relief. Exactly. I mean, it's- When Congress wanted to create a priority for a state, it put it in 507 of Title XI. This is not in 507 of Title XI. Effectively, you're creating- Take- It's almost like creating a super credit, which the state can then intercept, whether it's the supplemental or the fee for service, ahead of everybody else. And you have to balance that against the rehabilitative nature of a Chapter XI case, and especially a health We know what happened in Gordon's, right? We know what happened. The record is clear below that ultimately the hospital closed. It just ran out of money. And if it had this extra money in it, it goes back to that balancing. But the interconnection, every dollar in a Chapter XI counts, Your Honor. Yeah. It all goes into a big pool, and then all the creditors get what's left over, and there wasn't enough money, and so your client went- Or your- The bankrupt went under. Somewhat. The hospital tried to sell itself, and ultimately ran out of money. But let me see if I can attack the supplemental payments, because it seemed to be sort of hard for the So, when- Well, another reason the supplemental is- Payments going out to the- On the supplemental side. So the private hospitals pay in, but public hospitals receive money out of this supplemental care. Children come in, administrative costs. It's like a tax. If it's a tax, Your Honor, then there are two- Like a tax, effectively. Perfect. Okay? So then it's a tax. Then you've made my argument on the supplemental, and let me explain. Oh, and tax liens are dischargeable? It's- Taxes are of a different nature. I know that, but they're not dischargeable. Whether they're dischargeable or not is irrelevant. I understand that. But philosophically, that's kind of where you are. Well, it's a different nature of claims. Okay. I'm sorry I disrupted you. Go ahead. Because I'm arguing outside the law, so go ahead. I understood, Your Honor. But if you sort of think about, if it's a tax-like structure, and we don't know what it is. It hasn't been determined yet. The supplemental payment is sort of a stream of income. But then if you sort of think about recoupment, recoupment requires two debts of sort of the same nature. So if you allow a recoupment of a tax-like obligation on the one side against a non-tax stream of income on the other side, then you've crossed lines. It's the same nature part that I have trouble with. Because if I'm contributing to a pool of money that's going to be divided out, and I'm going to get some share of it, and I haven't made my contribution yet, it would be natural to think that you'd net that out in sorting it. And that's what the supplemental payments look like, because if you follow the flow of the funds, they're into the same pot, in and out, and we're just netting out the difference between what I was supposed to kick in and what I didn't. That looks different from the fee-for-service. And where does it say that it has to be the same nature of payment before I can do that offsetting? Well, if the Court will allow, the one thing you said was we weren't making a contribution. That was in Your Honor's question, and I disagree with that concept. Let me tell you why. We are making the contribution. It's just consistent with the priorities of the Bankruptcy Code. So it's not that the provider is not paying in bankruptcy dollars and paying in real dollars or separate animals. So what we're saying is we can pay in, the State can get a claim. In some bankruptcy cases it could be 100 cents, in some cases it could be 1 cent. But the concept, and I think the courts below, I believe, were flawed on that. It's not that they weren't paying in, they are paying in, but they're paying in consistent with how Congress mandated it. It's completely distinct, and if the Court sort of then says in order to pay, you have to pay in real dollars, well, then you're flouting the Bankruptcy Code with all due respect. So this is something that, you're making an argument that would essentially benefit the other creditors in the bankruptcy court and benefit the Bankruptcy Estate. But we've got two bankruptcy decisions where their role is protecting the Bankruptcy Estate, and they don't find that as a countervailing interest, outweighing that the creditor's priority should, they're not finding that the creditor's priority should outweigh the State's interest here. In fact, they're doing a quite expansive reading of the logical relationship test, which would diminish the value of the Estate. And it's just curious to me because I would think that a bankruptcy court would, if that was the correct principle, would go that way, would have gone your way. Which is why we're here for Your Honor's de novo review, which is, I get it, is every time I represent a creditor going into bankruptcy court, the debtor sort of gets the nod because of what Your Honor referred to, the rehabilitative purpose of a bankruptcy court. Simply because the courts below, I think they viewed it, and I go back to the, as Judge Kurtz said at the BAP, that's not fair. But they didn't see it as damaging the priority system in the bankruptcy code, to the extent that you're arguing. I think, Your Honor, I think they viewed the elasticity of the logical relationship broader than I think this court should. And let me just, the court should be well aware that the Ninth Circuit is a conflict between the circuits in how recoupment is addressed. The Second Circuit has a logical, it doesn't apply the logical relationship, they apply the single transaction test. So we would caution this court to extend the bounds of logical relationship here. Because you're going beyond inherently what's in TLC, you're going beyond Newbery. So I understand Your Honor's hesitation and try to have deference to the bankruptcy court. But we would ask the court to apply the precedent, because the implications are significant. The next healthcare case that's going to come along is what happens to that Medi-Cal patient that comes in two weeks after a bankruptcy? As I see the implication is that the debtor may ultimately go out of business sooner if we let the state immediately recoup this money. Absolutely, Your Honor. And that's a... And that's something that maybe is a policy thing that the state should be thinking about or the federal government. Well, or the court could look at it as set off, recoupments, I'm sorry, should be viewed narrowly. And that the policy should be that the, at least in the context of healthcare, that the provider should get the knowledge. Yeah, that's what I'm questioning. That's really what it is, Your Honor. Because it's an equitable doctrine at its heart, the question is, should the state have the super priority? Or should the state be a general unsecured creditor? Congress made the decision to make them a general unsecured creditor. And if we viewed it as a tax, it would have a different priority? Would that be... Absolutely, Your Honor. ...that distinct from the other creditors? Yes. Would it be higher or lower? Higher, Your Honor. So if it's viewed as a tax, that's the complexity of this case. But that issue isn't before us. No one's claiming... Well... And actually, the state has called it a tax. They have, Your Honor. And that's... We do make the point in our briefs of judicial estoppel, which is, the state can't speak with forked tongue when it comes to this tax or fee. It's either entitled to priority or not. If it's entitled to priority, then it can't be recouped. And that's sort of the nature... Judge Collins, I didn't mean to ignore your question, but that was the distinction. It was one of priorities. You can't recoup a priority claim against, effectively, something coming in on a general unsecured credit. Those streams have been crossed. All right. You're well over. I'm sorry, Your Honor. Thank you. Don't apologize. We helped you get there. It's only because we love you so much. Good morning. May it please the Court, Deputy Attorney General Kenneth Wayne, on behalf of the police. This Court should affirm the BAP's decision that the department's withholdings were valid recoupment for two reasons. Number one, the supplemental payments and the fees came out of the same pot of money. The BAP correctly held that the supplemental payments were entitled to recoupment because the payments were part of the same transaction as the fees that guardians needed to pay. Number two, BAP correctly withheld that the fee for service payments were entitled to recoupment because the provider agreement required guardians to pay the fees in order to receive the benefits of a Medi-Cal provider. That was in the provider agreement. Guardians signed the agreement agreeing to the conditions in the agreement. Well, the condition that's in the agreement is to apply all of the law, and this was buried in the very large number of provisions that are incorporated in that cross-reference. Isn't that right? There wasn't like a specific provision that replicated this equalization, was there? There is. There was actually a very specific provision in the provider agreement on the very first page of the agreement. It says you have to agree to comply with Chapter 7 and 8 of the Welfare and Institutions Code from Sections 14,000 to 14,200. For Welfare and Institutions Code 1416952, the providers need to pay the fees. It is right there, bolded in a block section, telling the provider that you have to comply with the law. You have to pay the fees in order to get the... any other payment. Could you put in the contract that, you know, you have to pay your income tax and these other things, and if you put that in the agreement, then we have to treat them as logically related and put you to the front of the line? Let me first talk about the supplemental payments. That is very clear. The fees come in. After federal matching dollars, the money is redistributed in four different ways. One of the ways is supplemental payments. There's logical relationship. Fees need to come in for the payments to go out. And the word transaction is explained, constructed, and interpreted very broadly by the Ninth Circuit in Madison and in Newbury. That was pointed out by the Bankruptcy Court below and by BAP. With regard to the fee for service payments, there is a logical relationship. First of all, the word transactions is construed very liberally. And also, guardians specifically agree to pay the fees in order to receive the payment benefits, and guardians also agree to have the withholdings by the department if it failed to pay the fees. And that's due to this cross-reference to entire chapters of the code. Yes. But you didn't answer my question. If you put into the contract that you have to also agree that you have to pay your income tax, all these other unrelated fees, and that I get to deduct them out of your payments, is that enough, in your view, to establish a logical relationship that would then put you to the front of the line and allow you to recoup? I believe that will create a logical relationship for the withholdings by the department to be a valid— In your view, logical relationship is dictated by whatever the state puts in its contract and not by the flows of money or the actual relationship of the transaction? There's a logical relationship that requires guardians to pay the fees in order to receive the benefits, Medi-Cal payment benefits. And they also specifically agree that you have to pay the fees. If you don't pay the fees, the department could withhold any Medi-Cal payments to recover the fees that were not paid. And with regard to the priority to the equity issue, guardians is not entitled to this money because it failed to fulfill its own obligation by paying the fees in order to receive the payments. The equity issue was examined by the Ninth Circuit. It was also examined by the U.S. Supreme Court. As long as there's a logical relationship, there is no issue of preferential treatment. That was in the case of Reeder v. Cooper. The Supreme Court looked at the equity issue in the context of recoupment. The same preferential treatment issue was also looked at by the Ninth Circuit in Newberry. So as long as there's a logical relationship, the equity issue is not a concern. But we also have to go back to the very basic point. What the state wants is that it wants money from the department, but it failed to fulfill its own obligation of paying the fees. That's a two-way relationship. Let me ask you a question about the supplemental payments. They make a big deal over the provision in federal law that says that they can't be correlated. Is that something that we have to take into account in looking at the logical relationship that the relationship you're positing might violate that provision? No, Your Honor. This Court does not have to evaluate that issue because that issue was raised for the first time on appeal. So the Court does not need to evaluate that issue because of that procedural violation. And second of all, what Gordon is referring to is the home homeless provision. Home homeless provision is this. You pay me, why? And I refund the same amount of money back to you. There is no such situation here. The fees are different from the supplemental payments that Gordon would have received if he paid the fees. The calculations are different. The fees are calculated differently versus the supplemental payments. It says in the hold harmless, in listing what you can't do, it says it can't be that all or any portion of the payment made under the subchapter to the taxpayer varies based only upon the amount of the total tax paid. How isn't that the case here? Because the amount you pay them under the subchapter does in fact vary by how much tax they paid because you're taking out the fact they didn't pay it. With the home homeless provision was that the fees collected and the payments made, the payments returned are supposed to be meant to be a refund back to the payee. The quality assurance supplemental payments are not meant to be a refund back to the hospital that pays the fee. That is a distinction. That is why the home homeless provision does not apply here. That was not the intent of the supplemental payments. And so your view is that this is an issue for you and the federal department if it wants to come after you, if it thinks you're violating this. It's not our concern. We just look at the logical relationship and you'll take whatever risk if they think you're violating this. That's correct, your honor. And also, the quality assurance fees were specifically approved by the federal government by CMS, Centers for Medicare Services. It approved the department's imposition of the quality assurance fees. So based upon that, I do not believe that there will be any problems between the department and the federal government. And CMS approved the quality assurance fees back in 2009. So it has been almost 10 years since the imposition of the quality assurance fees. Other than the promise to reimburse through the incorporation, tell us why there's a logical relationship between the fees for service and the missing H-Quaf. The fee for service, I go back to my earlier statement that the hospital needs to pay the fees in order to receive Medi-Cal payments. That was a condition in the Medi-Cal provider agreement. My question to you was, other than that provision, what do you have that shows that the logical relationship is established? Other than that, the fees and the Medi-Cal payments are all a part of the Medi-Cal system. The fees paid into the system after federal matching dollars are redistributed in four different ways. Aside from supplemental payments, another stream of payments out is to cover the healthcare coverage of low-income children who are on Medi-Cal. That is an aspect of Medi-Cal. So it is all, the fees come in, it supports the entire Medi-Cal system. The department relies on the fees after matching dollars to pay for the healthcare costs of the low-income children. So there is a logical relationship, and that logical relationship, according to the Ninth Circuit, can be construed very liberally. With respect to equity, guardians focus a lot on equity, and guardians focus on the tax issue. I have dealt with this issue for many years now, and it is the department's position that the fee is a tax because of the redistributive nature of the fee. But regardless, what we need to look at is the logical relationship, and that is what the Bankruptcy Court, and that is what BAP did. So long as you meet that relationship, recoupment is valid. Unless the Court has any questions for me. No, I think we're fine. Thank you. Thank you very much, counsel. You were over. I'll give you a minute. Just one minute. You're not allowed. Just a minute. I just want to address a couple of points made by Judge Collins. One is the question you just asked, Mr. Wang, about the correlation of the fee for service. How is it connected, otherwise, to the provider? Let me give Your Honor two quick distinctions. One is HCQA fees are due irrespective of whether they have the Medi-Cal provider agreement. Irrespective of what? Irrespective of whether there's a provider agreement. So there's no linkage between having a provider agreement and paying HCQA fees. They're two different animals. And HCQA payments are provided to providers who may not have Medi-Cal payments. And thirdly, Medi-Cal preceded and exists independently of the HCQA program. That's point one real fast. Another question Judge Collins, you asked to Mr. Wang, which is how do you link contracts and the linkage of logical relationships? Can you just put something in a contract and inherently have a logical relationship? We would submit that what parties do in a contract is just at the superficial level, the goal of a court is to actually understand the logical relationship irrespective of what's in the contract. I appreciate Your Honor's time. All right. Thank you, counsel. Gardens Regional Hospital and Medical Center versus State of California is submitted.
judges: Wardlaw, Bataillon, Collins